William C. Hecht, Jb., J.
This article 79 (Civ. Prac. Act) proceeding was brought by the beneficiary of an inter vivos trust to direct the trustees to account. The trust was created in July, 1946 by petitioner’s grandmother and uncle. The trustees were petitioner’s mother and the bank.
The income was to be paid to petitioner until she reached the ago of 31; thereafter, the income and specified portions of the principal were to be paid to her annually until she became 50 years of age, at which time the balance of the principal was to be paid to her. If petitioner died before attaining 50 years, whatever remained in the trust was to be distributed to her distributees under the laws of New York. The trust res was created and administered in New York County.
Respondent trustees allege that on August 4, 1960, in New York County, petitioner executed a deed of trust. In such deed she transferred to her mother and father, as trustees, all her interest in the principal and accumulated income of the 1946 trust. The trustees were to receive the same and hold it until petitioner reached the age of 50, subject only to payment to her *1026 by them, in their discretion, of such sums as they may decide. On her reaching the age of 50, the corpus and accumulated income were to be paid to petitioner.
If she was not then alive, the fund was to be distributed ‘ ‘ to her issue, in equal shares per stirpes”; if she left no issue, “then to such parties in such shares and upon such terms as she shall by her last will and testament appoint, and in the default of such appointment or insofar as such appointment shall be void or fail to take effect, then to such parties as loould be entitled to inherit the same under the laws of intestacy of the State of Connecticut, then in effect.” (Italics supplied.)
This 1960 trust deed does not recite petitioner’s residence; it was acknowledged by her in the State of New York. She is now a resident of this State.
Petitioner alleges that she has no recollection of having executed this 1960 trust deed and the accompanying assignment for her interest in the 1946 trust; that she is wholly unaware of their purported execution; and that if they were in fact executed by her, such execution was procured by the fraud and duress of her father.
Petitioner is married but has no issue. She has no brother nor sister and never had any.
Petitioner alleges that on March 14, 1961, subsequent to the filing of the petition herein, she delivered an acknowledged instrument to her mother and father and the bank. In this writing, she disavowed having executed the 1960 trust deed and assignment, but if nevertheless they are valid instruments, “ I hereby, pursuant to Section 23 of the Personal Property Law and Section 118 of the Beal Property Law, ” * * revoke the said alleged trust agreement and assignment * * * and hereby declare the same to be of no force or effect whatsoever.” This instrument does not bear the consent of petitioner’s mother or father or husband.
Bespondents admit that the bank received a copy of the foregoing 1961 instrument, but deny that any copy was received by petitioner’s mother or father. They allege further that petitioner was unable to comprehend the nature and effect of that instrument and lacked the capacity to execute it.
The first question to be determined is whether the 1961 instrument, if executed by one having capacity to do so, effectuates a revocation of the 1960 trust deed and assignment. The section on which petitioner relies originally read as follows:
“ § 23. Revocation of trusts upon consent of all persons interested.
*1027 “ Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof.”
By chapter 180 of the Laws of 1951, the following paragraph was added: “ For the purposes of this section, a gift or limitation, contained in a trust created on or after September first, nineteen hundred fifty-one, in favor of a class of persons described only as heirs or next of kin or distributees of the creator of the trust, or by other words of like import, does not create a beneficial interest in such persons.”
As I indicated in Matter of Decker (13 Misc 2d 121, 122) this provision would undoubtedly authorize the revocation here if the petitioner had merely used the words “ next of kin ”, inasmuch as the trust was created subsequent to September 1, 1951. Respondents argue, however, that this does not apply here because the settlor used the words “ such parties as would be entitled to inherit the same under the laws of intestacy of the State of Connecticut, then in effect.”
The foregoing amendment was enacted on the recommendation of the Law Revision Commission in order to carry out ‘ ‘ the legislative policy favoring the easier revocation of inter vivos trusts.” (Matter of Peabody, 5 N Y 2d 541, 545.)
The recommendation was embodied in the 1951 Report of the Law Revision Commission, the pertinent parts of which read (pp. 84-86):
“ Many trusts contain provisions purporting to create an interest in the ‘ heirs or next of kin,’ or in the persons who would be entitled to take distributive shares of the estate of the creator of the trust in the event of his death intestate. Thus, in a large number of cases, the revocability of the trust depends upon a judicial determination whether the trust created a reversion or a remainder. The determination, however, is often extraordinarily difficult, depending on a finding of the intention of the creator of the trust as expressed in the particular trust instrument. In Matter of Richardson, 298 N. Y. 135 (1948), the Court of Appeals reviewed a number of previous decisions and indicated the factors which had previously been found to evidence an intent to create a remainder interest. In Matter of Burchell, 299 N. Y. 351 (1949), however, the Court pointed out the impossibility of formulating a universal rule. Bromley, J., said:
*1028 “In analyzing an instrument and attempting to explore the almost ephemeral qualities which go to prove the necessary intent, many single factors may be considered. Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases. In the last analysis, the ultimate determination rests on the particular instrument under consideration, aided by the rule which has grown out of the old common-law doctrine and developed over a long line of cases as a rule which allows the language of the instrument creating a remainder to take effect provided some additional evidence pointing the intent of the grantor is present to buttress the language which would create the remainder.
“ Judge Fuld, dissenting, said:
“ Reversion or remainder, however, the volume of litigation on the subject, the diversity of opinion, not to mention the difficulty, frequently, of decision, point the advisability, if not the urgency, of clarifying legislation.
“ Judge Bromley, writing for the majority of the Court in Matter of Burchett, had suggested that the doctrine of Doctor v. Hughes, supra, might well be abrogated by statute, so that language limiting an interest to heirs would be ‘ unequivocally given its full effect ’ as creating a remainder, without the necessity of searching for evidence of intent to support it. Such a statute would indeed bring an end to the difficulties and expensive litigation required under the present rule. It would result further, however, in making irrevocable every trust which purports to create an interest in heirs or next of kin. The Commission believes that this result would be undesirable. & Hr #
“ The Commission believes that consent of members of a class described in the trust instrument as heirs and next of kin, or as the persons who would take in the event of intestacy, should be dispensed with without regard to the question whether the creator intended the legal result of creating a remainder interest in them. In their capacity of ‘ distributees-upon-intestacy ’ they have no more than an expectancy while he lives, and their own death prior to his, or in many cases the birth of other persons or the marriage of the creator of the trust, will prevent any interest from vesting in them. This uncertainty is inherent in the description of such a group, and exists to the same extent with respect to their inclusion in á class of beneficiaries • even where the trust instrument creates a remainder interest In the group.
*1029 “ The very form of language typically used to describe such a class indicates that they are thought of not as individuals who may be objects of the special regard of the creator of the trust, but as the group prescribed by law as ultimate recipients of his property failing all other dispositions he may make.
“ The amendment of sections 23 and 118 proposed by the Commission would declare that, for the purposes of these sections, a gift or limitation in favor of a class of persons described only as heirs or next of kin or distributees of the creator of the trust, or by other words of like import, does not create a beneficial interest in such persons.” (Italics supplied.)
G-iving a liberal interpretation to the statute to effectuate the legislative policy in the light of the above recommendation, I conclude that the words used here are “ words of like import ” as contemplated in the statute.
Eespondents rely on Hopkins v. Bank of New York (261 App. Div. 465, 466 [1st Dept.]), where the ultimate gift over was ‘ to such person or persons who, under the laws of the State of New York, would then be the next of kin of the settlor ”, while the settlor was domiciled in Connecticut. The court considered that this reference to the Statute of Distributions of a State other than the settlor’s domicile indicated an intention to create a remainder rather than a reversion. However, the court reached the same conclusion where a New York settlor described the ultimate donees as “ her next of kin and heirs at law according to the ‘ Statutes of Descent and Distribution of the State of New York.’ ” (Minc v. Chase Nat. Bank, 263 App. Div. 141, 143 [1st Dept.].)
Both of these cases were decided prior to the 1951 amendment. They are not controlling here in view of the legislative policy expressed in that amendment to favor the easier revocation of inter vivos trusts.
Inasmuch as respondents contend that the 1961 instrument was not properly served upon the two trustees under the 1960 trust deed and that petitioner lacked capacity to execute the instrument, a referee would have to be appointed to hear and determine these issues of fact (Civ. Prac. Act, § 1316). However, since this appears to be the first case involving the application of the 1951 amendment to a trust instrument where the distributees are described as those taldng under a statute of a State which is not the settlor’s domicile, respondents should have the opportunity to review this question of law; for if they are successful on appeal, this portion of the factual inquiry will become moot. It will then be necessary to examine only into petitioner’s allegations that she did not execute the 1960 trust *1030 deed and assignment, or that their execution was procured by fraud and duress.
Accordingly, an intermediate order will be made, pursuant to section 1314 of the Civil Practice Act, to the effect that the 1961 instrument, if validly executed and if properly served on the trustees, constitutes an effective revocation of the 1960 trust deed and assignment.