OPINION OF THE COURT
Anthony A. Scarpino, Jr., S.
*201 Stephen Goetz, the petitioner in this proceeding to set aside a limited power of appointment, now moves for summary judgment, contending that an attorney-in-fact may not use that authority to amend a trust created by another person and confer upon herself a limited power of appointment over the trust remainder. Sylvia Perle (respondent) is the successor executor of the estate of the late Robert Goetz and the executor of the estate of Verena Goetz. She opposes the petitioner’s motion, contending that both the creation and exercise of the power were lawful.
The Goetz family trust was created on May 11, 1995 as part of the family’s estate planning by Robert, Verena’s husband and the father of both the petitioner and the respondent. Article eleventh of the trust provides that the grantor reserves to himself the right to revoke or amend the terms of the trust during his lifetime. On March 9, 1995, Robert executed a statutory short-form durable power of attorney in Verena’s favor, granting her the full authority included in the form at that time. Robert executed a first amendment to the trust on August 31, 2000, making an adjustment in a gift to Sylvia.
In December 2000, Verena and Robert became concerned that a California real estate transaction between the petitioner and his father was not entirely fair to his parents. Robert had become very ill and it was clear that he would pass away before they could complete their investigation of the transaction. Their long-time estate attorney testified at a deposition that he visited them at home to discuss their estate plans and it was decided that, rather than Robert taking decisive action before the investigation was completed, Robert would revoke the trust provision dividing the residue equally among their children, and instead grant Verena a limited testamentary power of appointment so that she could adjust the bequests as appropriate among the four children. To that end, a second amendment to the trust was prepared for Robert’s signature.
On December 11, 2000, one of the lawyers who prepared the amendment took it to the Goetz home but, although Robert signed the document, the attorney did not notarize his signature. She testified that she no longer recalled why not, speculating that perhaps she had doubts as to his competence. The following day, Verena, as Robert’s attorney-in-fact, signed the second amendment. Robert passed away on December 15, 2000. Verena herself passed away on February 1, 2002, leaving a last will and testament dated August 23, 2001, which expressly disinherited *202 the petitioner and exercised the power of appointment in favor of her other three children.
Verena’s will was admitted to probate after this court granted summary judgment dismissing the petitioner’s objections, which included a protest of the second amendment to the trust. The court declined to address the effectiveness of the power of appointment in the context of the probate proceeding, requiring instead that this miscellaneous proceeding be commenced.
The petitioner contends that, as a matter of law, Verena’s attempted amendment of the inter vivos trust under the power of attorney was invalid because Verena used it to make a gift to herself, did not have the authority to amend or revoke the trust, and exceeded the authority granted her under the power of attorney.
The respondent points out that the trust, the power of attorney and Robert’s and Verena’s wills were the products of careful planning, representing a coherent, coordinated testamentary scheme for both of them. Verena was a trustee of the Goetz family trust, as well as its income beneficiary, had fully participated in all of their financial decisions, and had held her husband’s power of attorney since 1995. Respondent argues that Robert had made the gift of the remainder interest to his four children in the body of the trust, and the second amendment alters that disposition only to the extent of giving Verena the authority to designate which children would share in the gift, rather than conferring a gift upon Verena herself. The respondent contends that the amendment was signed by Verena due to Robert’s failing physical condition, but was consistent with their plan and Robert’s expressed wishes.
The parties have agreed that the issue presented here is one of law, rather than fact, as the facts are not in issue. The question of law presented here is whether an inter vivos trust may be amended by the use of a power of attorney when neither instrument explicitly authorizes such amendments.
An attorney-in-fact may act for her principal in all matters which do not require that the principal act for himself (Zaubler v Picone, 100 AD2d 620, 621 [1984]), to the extent permitted by law and the terms of the power of attorney (see General Obligations Law §§ 5-1502A — 5-15020; Cymbol v Cymbol, 122 AD2d 771, 772 [1986]; Mallory v Mallory, 113 Misc 2d 912 [1982]).
New York Estates, Powers and Trusts Law § 7-1.16 provides that a lifetime trust is irrevocable, unless it expressly provides *203 that it is revocable, and if it is, the trust may be revoked or amended in the creator’s will, or by the method set forth in EPTL 7-1.17 (b). That section provides, inter alia, that any amendment or revocation authorized by a trust must be in writing and executed by a person authorized to amend or revoke the trust. The statute clearly presumes that a grantor may reserve to himself, or grant to another person, the authority to revoke or amend an inter vivos trust (see Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.17, at 335).
The scope of the authority to revoke or amend a trust is, therefore, defined by the terms of the trust indenture and New York law, just as the scope of authority granted under a power of attorney is governed by the terms of the power of attorney itself, and, of course, the applicable law (see Matter of Farley, 186 Misc 2d 355, 356 [2000]; Cymbol v Cymbol, 122 AD2d at 772; Zaubler v Picone, 100 AD2d at 621).
Article eleventh of the trust sets forth the method for amending or revoking it. It provides:
“The GRANTOR hereby reserves the continuing right and power, by instrument (other than a Will or Codicil thereto) executed and acknowledged by the GRANTOR and delivered to the Trustees during the GRANTOR’S lifetime, to revoke this Trust Agreement in whole or in part, or to alter or amend any terms or provisions thereof in any way except that the GRANTOR shall have no power to increase the duties or obligations of the Trustees without their written consent.”
This provision clearly reserves the power to amend or revoke to the grantor, and conforms to New York law (see EPTL 7-1.16, 7-1.17). However, it does not explicitly confer the same authority upon the grantor’s agent, or upon any other person. The petitioner argues that EPTL 7-1.17 (b) requires that, if an agent or other person is to be granted the authority to amend a trust, the indenture must so specify, and article eleventh does not do so.
It is not disputed that Robert himself retained the authority to amend the trust, and, had the second amendment been notarized, it would have been effective. However, for reasons which remain unclear, Robert’s signature was not acknowledged as required by article eleventh. Regardless of Robert’s intentions, whatever they may have been, he did not fully comply *204 with the formalities necessary to amend the trust, and neither the trust nor the power of attorney explicitly authorized Verena to amend it.
The respondent argues that the power of attorney did, indeed, include the authority to make trust amendments. The statutes concerning powers of attorney are found in General Obligations Law § 5-1501 et seq. The respondent points to General Obligations Law §§ 5-1502A, 5-1502B and 5-1502C, which set forth the attorney-in-fact’s authority in relation to transactions involving real estate, chattels and goods, and bonds and shares, respectively. Each of these sections contains a subsection granting the authority to execute and deliver a modification of a trust, mortgage or other instrument “which the agent may think useful for the accomplishment of any of the purposes enumerated in this section” (General Obligations Law § 5-1502A [9]). Sections 5-1502B and 5-1502C contain the same language quoted from section 5-1502A (9), and the respondent asserts that they form the basis of a broad grant of authority in relation to trusts. In particular, the respondent contends that the trust principal is real estate, so that the provisions of General Obligations Law § 5-1502A (2), together with General Obligations Law §§ 5-1502B (2) and 5-1502C (2), grant Verena the authority to amend the trust, as Robert intended.
In general, General Obligations Law § 5-1502A refers to the purchase, sale, management, assignment or other acts necessary for dealing with real property, granting the agent the authority to do any act which the principal can do through an agent, with respect to any estate or interest in land (General Obligations Law § 5-1502A [12]). The transaction here does not concern the disposition of an interest in land. Instead, it concerns the designation of persons entitled to take the residue of a trust. Additionally, it must be noted that the section of the General Obligations Law dealing with estate transactions (General Obligations Law § 5-1502G) does not contain language concerning trust amendments, nor does the General Obligations Law contain a section conferring upon agents authority over trust transactions in general.
A grantor’s power of revocation has, historically, been deemed a personal right, terminating upon death, which cannot be exercised by an executor or legatee who is not granted that right in the trust (Culver v Title Guar. & Trust Co., 296 NY 74, 78 [1946]; Matter of Race, 9 Misc 2d 155, 157 [1957]). Compliance with the method set forth in the trust instrument for *205 amendment is required for an amendment to be effective (see Matter of Rothwell, 189 Misc 2d 191, 196 [2001]; Culver v Title Guar. & Trust Co., 296 NY at 78). Reading General Obligations Law §§ 5-1502A, 5-1502B and 5-1502C as a broad, implicit grant of authority to amend any and all revocable inter vivos trusts necessarily overrules, or substantially modifies, this line of cases sub silentio.
Further, revocable inter vivos trusts are commonly employed as estate planning tools and are coordinated with the grantor’s will, functioning in much the same manner as a will (see Matter of Tisdale, 171 Misc 2d 716, 718-719 [1997]). Because the Goetz revocable trust was created as a part of the decedent’s overall estate planning at the same time as his will, the trust can be deemed to “function! ] as a will since it is an ambulatory instrument that speaks at death to determine the disposition of the settlor’s property” (id. at 719). Because an amendable trust remains ambulatory, alterations to it can affect the testator’s estate plan in substantial ways, in the same manner as a codicil. Were the court to recognize the second amendment to the Goetz trust as valid, it could logically be compelled to recognize the validity of a codicil executed by the testator’s agent under a power of attorney, a result not permitted under present law (see EPTL 3-1.1 et seq.).
Most substantially, the instruments at issue here do not contain the terms and grants of authority which the respondents seek to read into them. Instruments must be construed as written, by their own terms, and courts may not add to or alter their provisions in the guise of interpreting them, nor interpolate into them broad grants of authority not included by the parties (Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256, 267 [1990]; Matter of Manning v Glens Falls Natl. Bank & Trust Co., 265 AD2d 743, 744 [1999]).
The petitioner has not cited any New York law or precedent which supports the proposition that an agent may use a power of attorney to modify a trust instrument which does not explicitly authorize that method of amendment. Other states have found attempted amendments not expressly authorized in the trust document or the power of attorney itself to be void and ineffective (Cal Prob Code § 15401 [c]; Tenn Code Ann § 35-15-602; see also Williams v Springfield Mar. Bank, 131 Ill App 3d 417, 419, 475 NE2d 1122, 1124 [1985]; Muller v Bank of Am., N.A., 28 Kan App 2d 136, 143, 12 P3d 899, 904 [2000]; Leahy v Old Colony Trust Co., 326 Mass 49, 52, 93 NE2d 238, 240 [1950]).
*206 The parties’ other contentions have been considered and found to be without merit.
Accordingly, the motion for summary judgment is granted, and the petition is granted in its entirety. The second amendment to the Goetz Family Trust is declared to be void and of no effect, and the attempted exercise by Verena Goetz in her last will and testament of the power of appointment is likewise void and ineffective.